IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 26, 2004

**H.M.R., ET AL. v. J.K.F.**

**Appeal from the Chancery Court for Washington County**
**No. 34457     G. Richard Johnson, Chancellor**

---

**No. E2004-00497-COA-R3-PT - FILED SEPTEMBER 1, 2004**

---

The trial court terminated the parental rights of J.K.F. ("Father") with respect to his minor child, S.B.R. (DOB: September 16, 1996), and granted the petition of the child's maternal grandparents, H.M.R. and S.M.R. ("the grandparents") to pursue adoption of the child. Father appeals, arguing, *inter alia*, that the evidence preponderates against the trial court's dual findings by clear and convincing evidence that grounds for terminating Father's parental rights exist and that termination is in the best interest of the child. We affirm.[1]

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY and SHARON G. LEE, JJ., joined.

J.K.F., Whiteville, Tennessee, Pro Se.

H.M.R. and S.M.R., Fall Branch, Tennessee, Pro Se.

**OPINION**

---

[1]Father filed a motion in this Court seeking to limit the grandparents to their original brief. This motion is granted and the Court will not consider any further filings by the grandparents. Father also filed a motion asking that we consider photographs filed with the motion. This motion is denied as our consideration is limited to the record certified to us by the trial court.

I.

On September 16, 1996, the child was born out of wedlock to Father and T.M.R. ("Mother")[2]. From the time of her birth, the child resided in the home of the grandparents and was raised by them.

On November 16, 2001, the grandparents filed a petition to adopt the child and to terminate Father's parental rights, based upon the ground of abandonment. The grandparents later filed an amended petition that included, as an additional ground for termination, that Father is confined in a correctional facility and is under a sentence of ten or more years. Father answered both the petition and the amended petition, denying the existence of grounds for termination.

The case was heard on September 16, 2003. On January 26, 2004, the trial court entered its order, finding, by clear and convincing evidence, that grounds for terminating Father's parental rights existed and that termination was in the best interest of the child. Specifically, the court made the following findings:

> This Court has determined, by clear and convincing evidence, that:
>
> [Father] has willfully abandoned said child within the meaning of [Tenn. Code Ann.] § 36-1-102, in that [Father] was incarcerated at the time of the initiation of this action to declare the child an abandoned child; [Father] has been incarcerated during all, or part of, the four (4) months preceding the initiation of this action; [Father] has willfully failed to visit and has willfully failed to support or make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding [Father's] incarceration; and, in spite of [Father's] ability to work and support his child, [Father] willfully and intentionally failed to do so.
>
> [Father] has willfully abandoned said child within the meaning of [Tenn. Code Ann.] § 36-1-102, in that [Father] was incarcerated at the time of the initiation of this action to declare the child an abandoned child; [Father] has been incarcerated during all, or part of, the four (4) months preceding the institution of this action, and [Father] has engaged in conduct prior to his incarceration which exhibits a wanton disregard for the welfare of the child;
>
> [Father] has been confined in a correctional or detention facility by order of the Court, as a result of a criminal act, under a sentence of

---

[2]Mother voluntarily relinquished her parental rights to the child and agreed to the adoption of the child by the grandparents. Mother's parental rights were terminated by the trial court's order of January 26, 2004.

ten (10) or more years, and the child was under eight (8) years of age
at the time the sentence was entered by the Court.

Termination of [Father's] parental rights to the child is in the best
interest of the child.

(Numbering and lettering of paragraphs in original omitted). In addition, the trial court granted the grandparents' petition for adoption and established "the relationship of parent and child" between the grandparents and the child. From this order, Father appeals.

## II.

Our review of this non-jury case is *de novo*; however, the record comes to us accompanied by a presumption of correctness that we must honor unless the evidence preponderates against the trial court's findings. Tenn. R. App. P. 13(d). No presumption of correctness attaches to the lower court's conclusions of law. ***Jahn v. Jahn***, 932 S.W.2d 939, 941 (Tenn. Ct. App. 1996).

## III.

It is well-settled that "parents have a fundamental right to the care, custody, and control of their children." ***In re Drinnon***, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing ***Stanley v. Illinois***, 405 U.S. 645, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972)). However, this right is not absolute and may be terminated if there is clear and convincing evidence justifying termination under the pertinent statute. ***Santosky v. Kramer***, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). Clear and convincing evidence is evidence which "eliminates any serious or substantial doubt concerning the correctness of the conclusions to be drawn from the evidence." ***O'Daniel v. Messier***, 905 S.W.2d 182, 188 (Tenn. Ct. App. 1995).

The issues raised in the pleadings, and the trial court's findings, cause us to focus on the following statutory provisions:

*Tenn. Code Ann. § 36-1-113 (Supp. 2003)*

(a) The chancery and circuit courts shall have concurrent jurisdiction
with the juvenile court to terminate parental or guardianship rights to
a child in a separate proceeding, . . . by utilizing any grounds for
termination of parental or guardianship rights permitted in this part
or in title 37, chapter 1, part 1 and title 37, chapter 2, part 4.

(b) The prospective adoptive parent or parents of the child, including
extended family members caring for related children, . . . shall have
standing to file a petition pursuant to this part or pursuant to title 37
to terminate parental or guardianship rights of a person alleged to be

a parent or guardian of such child. The prospective adoptive parents, including extended family members caring for related children, shall have standing to request termination of parental or guardianship rights in the adoption petition filed by them pursuant to this part.

(c) Termination of parental or guardianship rights must be based upon:

(1) A finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and

(2) That termination of the parent's or guardian's rights is in the best interests of the child.

* * *

(g) Initiation of termination of parental or guardianship rights may be based upon any of the following grounds:

(1) Abandonment by the parent or guardian, as defined in [Tenn. Code Ann.] § 36-1-102, has occurred;

* * *

(6) The parent has been confined in a correctional or detention facility of any type, by order of the court as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight (8) years of age at the time the sentence is entered by the court.

* * *

*Tenn. Code Ann. § 36-1-102 (Supp. 2003)*

As used in this part, unless the context otherwise requires:

(1)(A) "Abandonment" means, for purposes of terminating the parental or guardian rights of parent(s) or guardian(s) of a child to that child in order to make that child available for adoption, that:

* * *

(iv) A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child,

or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration which exhibits a wanton disregard for the welfare of the child; . . . .

\* \* \*

(D) For purposes of this subdivision (1), "willfully failed to support" or "willfully failed to make reasonable payments toward such child's support" means the willful failure, for a period of four (4) consecutive months, to provide monetary support or the willful failure to provide more that token payments toward the support of the child;

(E) For purposes of this subdivision (1), "willfully failed to visit" means the willful failure, for a period of four (4) consecutive months, to visit or engage in more than token visitation; . . . .

## IV.

Father raises several issues on appeal. Father begins by taking the position that there was an earlier proceeding in juvenile court in which Mother sought to terminate his parental rights. He argues that this petition, in some unspecified way, precludes the maternal grandparents from pursuing the petition to terminate in the trial court. There are three answers to this. First, there is nothing in the record certified to us by the trial court that establishes a prior petition to terminate being filed in the juvenile court by Mother.[3] Second, even if such a petition had been filed, we have no official document addressing its disposition. Finally, even if a petition had been filed at an earlier time, there is no showing as to why such a filing would preclude a new petition by different parties who are authorized to seek termination under Tenn. Code Ann. § 36-1-113(b).

Father next contends that "no actual evidence was presented to clearly and convincingly establish legal grounds for abandonment." We disagree.

In order to show that a parent has abandoned his or her child, pursuant to Tenn. Code Ann. § 36-1-102(1)(A)(iv), there must be proof that the parent was incarcerated at the time the petition to terminate was filed, or that the parent was incarcerated during all or part of the four months

_____

[3]In support of his argument, Father relies upon documents attached to his brief as exhibits. However, "[d]ocuments attached to a brief are not part of the official record on appeal." **Hunt v. Shaw**, 946 S.W.2d 306, 309 (Tenn. Ct. App. 1996).

immediately preceding the filing of the petition, and that the parent (1) "willfully failed to visit" the child; *or* (2) "willfully failed to support" *or* "willfully failed to make reasonable payments toward the support of the child" for four consecutive months just prior to the parent's incarceration; *or* (3) "engaged in conduct prior to incarceration which exhibits a wanton disregard for the welfare of the child." The trial court, in its memorandum opinion, found clear and convincing evidence of all three grounds:

> This Court finds that prior to [Father's] incarceration and after the birth of the child, he had many months, and many dates, and many times where he could have supported the child. But, in fact, [Father] has never paid any support for this child, including, from what I understand [of] the testimony, nothing toward the birth expenses, nothing towards the support – nothing, nothing. There were, as I said, many months after the birth of the child when [Father] had the opportunity to support the child, and he didn't, and he had the opportunity to visit the child, and he didn't. And he did not take advantage of any issue as to whether or not he could visit the child. He just mentally decided for his reasons that he gave today that he would not visit the child, and he didn't press the issue. He has never paid any support for this child when he has not been incarcerated, and when he has been employed. He doesn't pay any support today, although he's only making 17 cents an hour. He doesn't share any of those funds with this child. The Court does not accept his excuse that when he was out of jail after the child's birth, and even after the child's paternity was settled – I do not buy into this he did not have the ability to pay any child support. He had the ability to work, he had the ability to steal cars. He had the ability to buy drugs, he had the ability to spend money on other things. So I do not buy into his no ability to pay, or to – the fact of the matter is that this Court finds that [Father] has intentionally, purposefully, willfully failed to support his child, and failed to visit his child, and failed to take any means at his disposal to support or visit the child. This Court finds that for the purposes of the statute, prior to his incarceration, after the birth of the child, not only did he fail to pay, and not only did he fail to visit, as I've stated, but he acted in wanton disregard for this child's best welfare, showed no interest in this child. He was interested in collecting misdemeanor and felony charges against him. He was interested in devoting most of his adult life to crime and to serving time for his crime. The evidence is clear and convincing. Again, not only did he willfully, intentionally, purposefully fail to visit and support, the evidence is clear and convincing that he acted in wanton disregard for this child's best interest before his present incarceration.

Based upon this overwhelming evidence of abandonment, we find that the evidence does not preponderate against the trial court's finding that Father abandoned the child, which justified the termination of his parental rights.

Father next asserts that the trial court erred in finding, as an additional ground for termination of Father's parental rights, that Father is serving a sentence of 10 or more years. Again, we disagree.

Tenn. Code Ann. § 36-1-113(g)(6) states that parental rights can be terminated upon a finding that the parent has been confined in a correctional facility as the result of a criminal act under a sentence of ten or more years, and that the child in question is under the age of 8 at the time the parent was sentenced. On February 15, 2002, Father was convicted of a sixth DUI offense, a violation of an habitual traffic offender ("HTO") order, and criminal impersonation. Father received a sentence of six years for the DUI, four years for the violation of the HTO order, and six months for the criminal impersonation charge; the four-year sentence was to run consecutive to the six-year sentence. As the child was born in September, 1996, she was under the age of eight when Father was sentenced in February, 2002.

In addition, Father's probation on previous charges was revoked on February 29, 2000, and he was order to serve eight years in a correctional facility, with 3 years credit for time served. The February, 2002, sentencing documents specifically state that the eight-year sentence runs consecutive to the four-year HTO violation sentence.

It is clear that Father was under a sentence of more than 10 years and that the child was under the age of eight at the time of the sentencing. Accordingly, we find that the evidence does not preponderate against the trial court's finding of this ground for termination by clear and convincing evidence.

Finally, Father argues that the evidence preponderates against the trial court's findings that termination was in the best interest of the child and that the grandparents were fit persons to adopt the child. Our review of the record reveals an abundance of evidence to support both of these findings, which the trial court found – in both instances – by clear and convincing evidence. Accordingly, Father's final issue is without merit.

V.

The judgment of the trial court is affirmed. This case is remanded to the trial court for the enforcement of that court's judgment and for the collection of costs assessed below, all pursuant to applicable law. Costs on appeal are taxed to the appellant, J.K.F.

_____
CHARLES D. SUSANO, JR., JUDGE

-7-